**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

KIA LUNDGREN,

         Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

         Defendant.

No. C06-4013-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND
COMMISSIONER'S OBJECTIONS
TO REPORT AND
RECOMMENDATION**

———————————

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.*  *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.*  *The Vocational Expert's Opinion* . . . . . . . . . . . . . . . . . . . . . 5
    *C.*  *The ALJ's Decision* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *D.*  *Judge Zoss's Report and Recommendation* . . . . . . . . . . . . . . . . . 8
    *E.*  *The Commissioner's Objections* . . . . . . . . . . . . . . . . . . . . . . 11

*III.*  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *A.*  *Standards of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *B.*  *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*IV.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the court pursuant to United States Magistrate Judge Paul A. Zoss's Report and Recommendation (Doc. No. 12) in this judicial review of the decision by an administrative law judge ("ALJ") that plaintiff, Kia Lundgren ("Lundgren"), is not entitled to Title II disability insurance ("DI") benefits. Lundgren sought such benefits on the basis of fibromyalgia, neurofibromatosis, depression, irritable bowel syndrome (IBS), cognitive problems, morbid obesity, and other chronic pain. The ALJ's denial of benefits was affirmed at each subsequent stage of the administrative proceedings, and became the decision of the Commissioner of Social Security prompting Lundgren's action for judicial review and Judge Zoss's Report and Recommendation. (Doc. No. 12) Judge Zoss recommended that the Commissioner's decision be reversed and this case be remanded for the calculation and award of benefits. *Lundgren v. Barnhart*, No. 06-4013-MWB, 2006 WL 2796857, *1 (N.D. Iowa, Sept. 29, 2006). The Commissioner filed objections to the Report and Recommendation. (Doc. No. 13) The court finds this matter is now fully submitted for consideration.

## II. BACKGROUND

### A. Factual Background

On April 8, 2003, Lundgren filed an application for DI benefits, alleging a disability onset date of May 1, 2000. (R. 58-60) Lundgren alleged she was disabled due to fibromyalgia, neurofibromatosis, depression, diarrhea, and cognitive problems. (R. 87).

Lundgren's application and request for reconsideration both were denied, based on a determination that Lundgren was not disabled.

At the hearing before the ALJ, Lundgren amended her alleged onset date from May 1, 2000, to November 10, 2003. Lundgren attempted to continue working as a realtor after May 1, 2000, so she elected to amend her disability onset date to the date she last worked, even though she did not reach what she considered to be a substantial gainful activity level of earnings. (*See* R. 364-65, 374) Lundgren testified she became totally unable to work on November 10, 2003. She stated her most debilitating medical problems that prevent her from working are pain, overwhelming fatigue, problems sleeping, and irritable bowel syndrome. Lundgren stated that the pain is becoming worse and describes the pain as burning and stabbing, and that her legs are numb from her hips downward. (R. 374, 377) Lundgren's dosage of pain medication, Darvocet, was increased from one pill per day in June 2003, to two pills per day in August 2003, to three pills per day in February 2004, and then to four pills per day in May 2004. (R. 368-69) Lundgren testified her medication had been increased due to an increase in her pain. (R. 75) Lundgren stated the Darvocet does not alleviate her pain completely. She also takes Neurontin for pain. She described her pain as "body-wide," and that different parts of her body will hurt worse on some days . She never has a day free from pain and claims that on an average day, her pain level will be seven to eight on a ten-point scale. (R. 376-77) Lundgren stated her ability to sit, stand, and walk is affected by her pain, and pain limits her ability to perform household tasks. She indicated she is unable to sustain any activity for a long period of time. She has difficulty coping with the pain during the ALJ hearing, she indicated she was tense and nauseous, and her legs and head hurt. (R. 378)

Lundgren indicated her constant fatigue is a problem equal to her pain. Lundgren rated her average fatigue level at an eight or nine on a ten-point scale. Lundgren stated her

fatigue affects her ability to function during the day and that, on average, she spends at least half of the day sitting and resting. (R. 379-80)  Lundgren believes her medications contribute to her fatigue and other side effects.  Lundgren stated she has a constant headache, it hurts to breathe, she is unable to eat, she loses track of time, and she basically is nonfunctional. She stated that even on the days when she has a "normal" headache, her pain level is at an eight or nine on a ten-point scale, and she would not be able to function in a work environment. (R. 382-87)

In addition to pain and fatigue, Lundgren also suffers from various other conditions that interfere with her ability to work.  She testified that she suffers from irritable bowel syndrome, which Lundgren contended would, alone, hinder her ability to work. (R. 387-89) Lundgren also stated her depression is a factor in her inability to work, explaining that she cries daily, suffers from feelings of frustration, guilt, and worthlessness, and feels she is a burden to others. (R. 389-90) Lundgren testified that she has problems with her memory and concentration and has turned down social invitations and has begun withdrawing from people. (R. 391)  Lundgren testified that her inability to sit, stand, or walk about for longer periods of time is due to her pain, exhaustion, and lack of coordination. (R. 392-93)  Her husband does most of the grocery shopping and Lundgren accompanies him if she feels up to it. (R. 393-94)

Lundgren has no health insurance and she is unable to fill  new prescriptions for pain medication recommended by her physician due to the cost. She has been unable to attend physical therapy due to the cost, but she tried to walk back and forth in the flat area behind her house, and she does home exercises three times per week to try to stay limber. (*Id.*) Lundgren has continued seeing her doctors by making small monthly payments. She stated her counselor's fee is income-based. (R. 397)  Lundgren stated at the time of the

hearing that she weighed 225 to 230 pounds, which was down from her weight of 267 two years earlier, at the time of her hysterectomy. (R. 398)

The record contains several affidavits in support of Lundgren's application for benefits. There are affidavits from Lundgren's mother, a friend and former co-worker, Lundgren's husband, and Lundgren's former employer. All the affidavits noted that Lundgren's lifestyle, functional abilities, and enjoyment of life have been severely impacted by Lungren's pain and other impairments. (R.145-152)

The record as a whole indicates that Lundgren's condition has continued to worsen, rather than improve over the years requiring more medical and pharmacological intervention in order for Lundgren to have even limited normal daily function. (R. 185-215.)

## B. The Vocational Expert's Opinion

The ALJ asked the Vocational Expert the following hypothetical questions:

> The ALJ asked VE William Tucker to consider an individual forty-six years of age, forty-five at the amended alleged onset date, with three years of college and Lundgren's past relevant work. The hypothetical claimant would be able to lift ten pounds frequently, twenty pounds occasionally; stand or sit for thirty minutes at a time, for a total of six hours in an eight-hour work day; do simple, routine, repetitive tasks; tolerate occasional changes in a routine work setting; frequently understand, remember, and carry out detailed instructions; and have occasional interaction with the public. The VE stated that with these limitations, the claimant would be unable to return to any of Lundgren's past relevant work, and she would not have any transferable skills.(R. 401-02) However, the VE stated the individual would be able to work as a production assembler, an inspector and hand packager, or a marker or labeler, all of which jobs exist in significant numbers in the

local and national economies. (R. 402)The ALJ then asked the VE to consider the same individual, but with a reduced lifting ability of five pounds frequently and ten pounds occasionally, and who would have to take three unscheduled fifteen-minute breaks each day. *The VE stated the three fifteen minute breaks would preclude competitive employment. (Id.) Similarly, if the claimant had to lie down or sit with her feet up for half of the work day, she would be unable to work.* (R. 403-04)

*Lundgren v. Barnhart*, No. 06-4013-MWB , 2006 WL 2796857, *15  (N.D. Iowa, Sept. 29, 2006) (emphasis added).

## C.  The ALJ's Decision

The ALJ found Lundgren's testimony to lack credibility as to her pain and physical limitations:

The ALJ found Lundgren has not engaged in substantial gainful activity since her alleged disability onset date. He found Lundgren to have severe impairments in combination including fibromyalgia, depression, cognitive disorder NOS, and obesity with history of headaches. However, he further found her impairments, singly or in combination, do not reach the Listing level of severity. (R. 34)  Regarding Lundgren's other alleged impairments, the ALJ found:

The evidence has failed to establish the existence of a medically determinable impairment supported by medical signs and laboratory findings that could reasonably be responsible for producing the claimant's alleged symptoms concerning speech, instability of the right lower extremity, easy bruisability leading to lipoma formation or "sickness" causing their increased growth, or carpal tunnel symptoms/shakiness/ dropping of objects.

No medically determinable mental impairment has been established such as a somatoform type disorder which

6

could reasonably be responsible for the expression of symptoms indicated. Accordingly, the claimant's purported symptoms cannot be used to support a finding of disability – the ostensible degree of functional limitation regulating from the above purported impairments will not be rated.

(R. 26-27)

Because the ALJ found no medical evidence to support Lundgren's claim that her other symptoms are disabling, he found her complaints regarding those symptoms were not credible. He further gave no weight to the statements from her friends and family, except to the extent those statements were in agreement with the ALJ's assessment of Lundgren's residual functional capacity. He found Lundgren retains the residual functional capacity, both exertionally and nonexertionally, to perform work with the following limitations: lift up to twenty pounds occasionally and ten pounds frequently; stand for thirty minutes at a time, up to six hours in a workday; and sit thirty minutes at a time, up to six hours in a workday. He found Lundgren "is able to do simple, routine, repetitive tasks. She can have occasional changes in a routine work setting. She can have occasional interaction with the public." (R. 33)

The ALJ gave great weight to Dr. Wisco's November 10, 2003, opinions that Lundgren should not do any prolonged walking or standing; she would have difficulty with lifting, bending, or kneeling tasks; and she should be able to do sedentary work involving minimal repetitious hand use. However, the ALJ discounted the remainder of Dr. Wisco's opinion, finding Dr. Wisco did not have "available all of the evidence and inconsistencies available to the consulting physician for the state agency which indicate that the claimant had not been fully forthright in providing information to others concerning the existence, persistence and intensity of symptoms and functional limitations." (R. 29) The ALJ further noted Dr. Wisco did not have available "all of the evidence and inconsistencies in the record now before the [ALJ] which

also indicate the claimant's allegations are not well supported or entitled to full weight or credibility." (*Id.*)

The ALJ found Lundgren would be unable to return to her past work as a real estate agent, but he further found that "had she performed one of the other jobs indicated by the vocational expert . . ., she would have been and would be successful." (R. 32) *The ALJ further noted Lundgren "does not have a long work history with higher earnings to add to the credibility of her allegations." (R. 33)*

*With regard to the statements of Lundgren's friends and family concerning her condition, the ALJ noted:*

> *In so far [sic] as the claimant has not been completely forthright in her descriptions concerning the existence, persistence and intensity of alleged symptoms and functional limitations, and as other individuals have based their opinions in reliance on information which the claimant wishes them to know or see, the statements are not found to credibly or persuasively support a finding of disability or limitation greater than assigned by the [ALJ].*

(*Id.*)

The ALJ relied on the VE's testimony in finding Lundgren could work as a production assembler, inspector, or marker/labeler, each of which exists in a significant number. He therefore found Lundgren not to be disabled at any time through his March 11, 2005, opinion. (R. 34, 35)

(*Id.* at 16) (emphasis added).


### D. Judge Zoss's Report and Recommendation

Judge Zoss found the following:

> Lundgren argues the ALJ erred in rejecting the updated opinion of Dr. Wisco that Lundgren would be unable to sustain even sedentary work. She notes the state agency consulting opinions on which the ALJ relied heavily were based on

medical evidence that predated her alleged disability onset date. She argues the ALJ gave insufficient reasons for discounting Dr. Wisco's later opinion. She also argues the ALJ failed to evaluate her credibility properly, and erred in his evaluation of the third-party opinions. The court agrees on all counts. The ALJ recognized that Lundgren's impairments, in combination, were severe. However, the ALJ failed to recognize or address the debilitating nature of fibromyalgia in considering Lundgren's symptoms and her subjective complaints regarding her limitations. The record indicates Lundgren has sought continuous, ongoing medical treatment for her various medical problems since 1999, which bolsters the credibility of her complaints. None of her doctors indicated she was malingering or drug seeking. Indeed, if Dr. Wisco had believed Lundgren was being untruthful with him, as the ALJ intimates in his opinion, the doctor would not have continued prescribing Neurontin and Darvocet, or continued to increase the dosages of those medications as Lundgren's symptoms worsened. In Dr. Wisco's updated opinion letter regarding Lundgren's condition as of September 2004, he noted Lundgren's condition had worsened significantly over the preceding ten months. Nevertheless, the ALJ relied solely on medical opinions based on evidence that predated Lundgren's amended alleged onset date. The court finds this was error. The ALJ also appeared to overlook or even ignore the multitude of symptoms that can be related to fibromyalgia, including the diarrhea, irritable bowel syndrome, and instability in walking that were reported by Lundgren. Nor did the ALJ adequately assess the potential side effects from Lundgren's medications, which could include the ease in bruising, the slurred speech, and some of the cognitive difficulties Lundgren described. In addition, in considering Lundgren's credibility, the ALJ failed to recognize that Lundgren continued to try to work for over a year after she felt she had become disabled initially. The Eighth Circuit Court of Appeals has "long recognized that fibromyalgia has the potential to be disabling[.]" *Forehand v. Barnhart*, 364

F.3d 984, 987 (8th Cir. 2004). As the court noted in *Forehand:*

> [A claimant's] ability to engage in some life activities, however, does not support a finding that she retains the ability to work. *See Brosnahan [v. Barnhart]*, 336 F.3d [671], 677[(8th Cir. 2003)] ("[W]e have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity."). We have long stated that to determine whether a claimant has the residual functional capacity necessary to be able to work we look to whether she has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). This test is consistent with relevant regulations on the issue, *see* 20 C.F.R. § 404.1545, and we have reiterated it on a number of occasions. . . . [Citations omitted.] Notwithstanding this well-settled case law, our mandate is frequently ignored, and appears to have been in this case.

*Forehand*, 364 F.3d at 988.

In this case, as in *Forehand*, the records from the claimant's treating physicians "amply support her allegations of pain and limitation." *Forehand*, 364 F.3d at 988. *The court finds the ALJ erred in failing to give great weight to Dr. Wisco's opinion and to the treatment records of Lundgren's declining condition following her amended alleged onset date. The court also finds the ALJ erred in failing to give adequate consideration to the statements from Lundgren's family members and coworkers.* The ALJ found these statements lacked credibility because Lundgren would have told people or allowed people to see only what she wanted them to see. This opinion is unreasonable, particularly with regard to Ms. Dias and to Lundgren's husband and mother, all of whom have

10

observed the ongoing decline in Lundgren's health and her ability to function over a long period of time.

The Eighth Circuit has noted that substantial evidence to support an ALJ's findings exists when "on the record as a whole . . . [there is] evidence which a reasonable mind would find adequate to support the [ALJ's] findings." *Ellis v. Barnhart*, 392 F.3d 988,993 (8th Cir. 2005); *accord Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). On this record, the court finds no reasonable mind would conclude the evidence supports the ALJ's finding that Lundgren is not disabled. On the contrary, the record contains overwhelming evidence that Lundgren has been disabled since her amended alleged onset date.

*Lundgren v. Barnhart*, No. 06-4013-MWB , 2006 WL 2796857, *20 (N.D. Iowa, Sept. 29, 2006) (emphasis added).

Consequently, Judge Zoss found that in this case, the ALJ's decision should be reversed, and this case should be remanded for calculation and award of benefits. *Id* at 22.

### E.  The Commissioner's Objections

The Commissioner objects as follows,

Defendant objects to the Magistrate's discussion at pages 34 to 36 of the report and recommendation, in which the Magistrate determined the administrative law judge (ALJ) erred in the consideration of the credibility of Plaintiff's subjective allegations and the weight to be given the opinion of R. Chad Wisco, M.D. (Report and Recommendation at pp. 34-36).

The Magistrate held that the ALJ "failed to recognize or address the debilitating nature of fibromyalgia," "appeared to overlook or even ignore the multitude of symptoms that can be related to fibromyalgia," and did not "adequately assess the potential side effect from [Plaintiff's] medication" (Report and

Recommendation at p. 34-35). The Commissioner acknowledges that fibromyalgia "has *the potential* to be disabling." *Forehand v. Barnhart*, 364F.3d 984, 987 (8th Cir. 2004) (emphasis added). However, neither the Eighth Circuit's case law or the Social Security Act require that every claimant with a diagnosis of fibromyalgia be found disabled merely because the claimant has been so diagnosed. As with all severe impairments, it is the ALJ's responsibility to weigh all of the evidence of record to determine whether the individual claimant is disabled as defined in the Social Security Act.

The ALJ included Plaintiff's fibromyalgia among the combination of severe impairments and recognized the diagnosis of that condition (Tr. 34). However, the ALJ properly considered the minimal objective findings, including full range of motion and intact strength on most occasions, were not consistent with Plaintiff's reports of debilitating symptoms that prevented her from performing any work. The ALJ also noted that Plaintiff made numerous allegations of other disabling impairments, which where not supported by the objective evidence (Tr. 26-29). The ALJ properly found that Plaintiff's inconsistent reports to treating physicians and her reports to the Agency weighed against her overall credibility. See *Eichelberger*, 390 F.3d at 589 ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances."). Although the Magistrate appears to believe some of these symptoms might be secondary to Plaintiff's fibromyalgia, the medical evidence does not support that conclusion. The ALJ properly considered that Plaintiff had complained of numerous conditions that were not supported by medical evidence as indicative of a lack of credibility, and it would be inappropriate for the ALJ to form his own medical opinion on the origin of these unsubstantiated complaints. See *Pratt v. Sullivan*, 956 F.2d 830, 834(8th Cir. 1992); *Delrosa v. Sullivan*, 922 F.2d 480, 484-85 (8th Cir. 1991).

The Magistrate held that the ALJ erred "in failing to give adequate consideration to the statements from [Plaintiff's]

family members and coworkers" (Report and Recommendation at pp. 36). The ALJ properly noted that Plaintiff's lack of credibility, based on her lack of forthright descriptions of her symptoms, made reliance on her reports of her symptoms to her friends and family equally suspect and properly discredited these statements on that basis (Tr. 33). See *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992). *Hanna v. Chater,* 930 F. Supp. 378, 390 (N.D. Iowa 1996).

The Magistrate stated that the ALJ erred in failing to give great weight to Dr. Wisco's opinion (Report and Recommendation at p. 36). The Magistrate's holding ignores the fact that Dr. Wisco provided two inconsistent opinions (Tr. 315, 317, 319). Dr. Wisco first opined that Plaintiff could perform a range of sedentary work (Tr. 29, 317). Despite an interim treatment report noting that Plaintiff was improving, Dr. Wisco provided a subsequent opinion stating that Plaintiff had worsened and would have difficulty performing any meaningful employment (Tr. 315, 319). The Eighth Circuit has held that an ALJ may give less weight to a treating physician who "renders inconsistent opinions that undermine the credibility of such opinions." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted). The ALJ properly gave lesser weight to the opinion of Dr. Wisco because of inconsistencies with the record as a whole, including that physician's own treatment records and opinions (Tr. 29).

Finally, the Commissioner objects to the Magistrate's recommendation for reversal for calculation and award of benefits (Report and Recommendation at pp. 36-37). As stated in Defendant's initial brief, the ALJ is the trier of fact and should the Court remand this claim, additional fact-finding and weighing of the evidence is necessary, not a mere acceptance of Plaintiff's subjective allegations in light of the contrary evidence noted by the ALJ and by Defendant in her initial brief. See *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite

conclusion."). Such factual determinations are the province of the ALJ. See *e.g.Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); *Pearsall v. Massanari*,274 F.3d 1211, 1219 ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.").

   The Commissioner objects to the conclusions of the Magistrate with regard to the ALJ's consideration of the credibility of Plaintiff's subjective allegations and the ALJ's finding regarding the evidentiary weight to be given the medical opinion evidence. The Court should "disturb the ALJ's decision only if it falls outside the available 'zone of choice.' A decision is not outside that 'zone of choice' simply because we may have reached a different conclusion had we been the fact finder in the first instance." *Hacker,* 459 F.3d at 936 (citations omitted). The ALJ's determination, that Plaintiff retained the residual functional capacity to perform other work in the national economy, is supported by substantial evidence on the record as a whole and this case should be affirmed.

(Doc. No. 13)

## III.  LEGAL ANALYSIS

### A.  Standards of Review

   The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

14

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (citing 28 U.S.C. § 636(b)(1)); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)). The Commissioner made a timely objection in this case. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required here. *See* 28 U.S.C. § 636(b)(1).

The standard of judicial review for cases involving the denial of social security benefits is based on 42 U.S.C. § 405(g), which provides that "[the findings of the Commissioner of Social Security] as to any fact, if supported by substantial evidence, shall be conclusive." This standard of review was explained by the Eighth Circuit Court of Appeals as follows:

> Our standard of review is narrow. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a decision." *Id*. If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision.

*See Young v. Apfel*, 221 F3d 1065, 1068 (8th Cir. 2000).

The Eighth Circuit Court of Appeals has explained, "In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision." *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Easter v. Bowen*, 867 F.2d 1128,

1131 (8th Cir. 1989)); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.") (quoting *Black v. Apfel*, 143 F.3d 383, 385 (8th Cir. 1998), with internal quotations and citations omitted). A court's standard of review is narrow and the court must affirm an ALJ's findings if the findings are supported by substantial evidence on the record as a whole. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). Accordingly, in reviewing the record in this case, the court must determine whether substantial evidence on the record as a whole supports the ALJ's decision that Lundgren is not disabled.

## B. Discussion

As stated above, after a district court reviews the record, if the court finds that it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision." *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). Further, in reviewing the record for substantial evidence, the court may not make its own findings of fact by re-weighing the evidence and substituting its own judgment for that of the Commissioner. *See Baldwin v Barnhart*, 349 F. 3d 549 (8th Cir. 2003). Nevertheless, in this case, the court must determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Young*, 221 F. 3d at 1068. Upon the court's de novo review of the record, this court, like Judge Zoss, finds that no reasonable mind could find adequate support for the ALJ's conclusions.

The ALJ acknowledges that Lundgren has consistently sought relief and treatment for pain. (R. 34) Judge Zoss found that the substantial evidence in the record as a whole

supports a finding of disability. *Lundgren v. Barnhart*, No. 06-4013-MWB , 2006 WL 2796857, *22 (N.D. Iowa, Sept. 29, 2006). The Commissioner contends that, contrary to Judge Zoss's finding in the Report and Recommendation, the ALJ properly evaluated and discounted Lundgren's credibility based on the lack of the existence of medically determinable impairments supported by medical findings. (R. 26-27).

It is well settled law in the Eighth Circuit that while credibility findings are, in the first instance, for the ALJ, a finding that the testimony of a claimant is not credible must be supported by good reasons. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir. 1990) citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). In this case, Lundgren testified that she can no longer engage in her past relevant work, a fact which the ALJ accepted. (R.34). However, the ALJ stated no valid reasons for his further conclusion that Lundgren's impairments did not prevent her from engaging in other employment.

Lundgren stated that she is unable to function for any productive period of time with any reliability. (R.392-93) Lundgren testified that she is unable to even accomplish common household tasks in a normal time and manner. (R.394.) Lundgren further testified that even during normal non-employment functions, such as sleeping, her pain becomes unbearable. (*Id*.) When the pain becomes unbearable, Lundgren is unable to function. The record provided no evidence Lundgren might be exaggerating her pain. No notation by any medical provider or other witness indicated any pretense, malingering, or drug seeking behavior. (R.352-360) A search of the record reveals no evidence contradicting Lundgren's testimony; therefore, the record lacks support for the ALJ's opinion.

The Commissioner contends that the weighing of the evidence is a function of the ALJ as the fact finder. (Doc. No.13.) Whether the record supports a contrary result or

whether the court might decide the facts differently is immaterial. *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000). The court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *Raney v. Barnhart*, 396 F.3d 1007, 1009 (8th Cir. 2005). The court finds that there is no "substantial evidence" supporting the ALJ's decision, that is "relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Young*, 221 F. 3d at 1068.

Specifically, the ALJ's rejection of Lundgren's rather lengthy and consistent medical history of her limitations is without support in the record. In *Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004) the court stated a treating physician's opinion is generally entitled to substantial weight. This court notes that there is no evidence in the record that any of Lundgren's treating physicians, including the primary treating physician, Dr. Wisco, thought she was malingering, drug-seeking, or otherwise not being truthful with him. Lundgren's long medical history, her affidavits from witnesses, and her testimony at the hearing all support her claim of disability. As with another recent case:

> The Court has made an exhaustive search of this record for substantial evidence which will support the ALJ's decision. That evidence is not here. This is not a situation in which it is possible to draw inconsistent conclusions from the evidence. Although Plaintiff may be able to function . . . occasionally, . . .[he] is not able to do it day in and day out in competitive and stressful conditions in which real people work in the real world. *See Forehand*, 364 F.3d at 988, citing, among other cases, *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)(*en banc*).

*White v Barnhart*, 368 F. Supp. 2d 947, 950 (S.D. Iowa 2005).

Similarly, when the vocational expert was asked the effect of Lundgren's impairments on her inability to work, it was the vocational expert's testimony that

competitive work is not possible. (R.402-404.) A comprehensive search of the record does not reveal substantial evidence to support the ALJ's decision that Lundgren could, nevertheless, perform competitive work. Again, this is not a case in which it is possible to draw inconsistent conclusions from the evidence. *White*, 368 F. Supp 2d at 950 (also concluding that it was not possible to draw inconsistent conclusions from the evidence). Thus, the record does not provide substantial evidence supporting the ALJ's finding that Lundgren lacked credibility.

The record does not provide contrary evidence to Lundgren's lengthy medical record of her claim of incapacitating pain going back to 2000. Lundgren may be able to function for brief periods of time in strictly limited circumstances and conditions as the ALJ found, however, the ongoing effects of fibromyalgia, neurofibromatosis, depression, and IBS, have left Lundgren unable to function day in and day out in competitive conditions in which real people perform in the productive workplace. *See Forehand,* 364 F.3d at 988,( citing, among other cases, *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982)(*en banc*)). The ALJ failed to consider that fact.

Like Judge Zoss, this court concludes that the ALJ erred in rejecting Dr. Wisco's opinion. The court agrees with Judge Zoss that Dr. Wisco's statements were not conflicting, but opinions separated by time and the deterioration of Lundgren's condition. *Lundgren v. Barnhart*, No. 06-4013-MWB , 2006 WL 2796857, *20 (N.D. Iowa, Sept. 29, 2006). The court also finds the state agency consulting opinions on which the ALJ relied heavily were based on medical evidence that predated Lundgren's alleged disability onset date. The court also agrees with Judge Zoss's finding that the ALJ failed to evaluate Lundgren's credibility properly, and improperly and unreasonably discounted the credibility of the third-party opinions. *Id.* at 21 The court also finds that although Lundgren was enduring the pain and receiving treatment as early as 2000, her symptoms

did not reach a level of severity to the point of disability until the amended onset date of November 10, 2003. This is the date that Judge Zoss determined, based on a review of the record, that substantial evidence exists in the record to support an eligible disability and the court agrees. *Id.* at 22

The court may affirm, modify or reverse the Commissioner's decision with or without remand to the Commissioner for rehearing. 42 U.S.C. § 405(g). A remand to take additional evidence, in this case, would only delay the benefits to which Lundgren is entitled. In such circumstances, the Court may reverse and order an award of benefits. *Duncan v. Barnhart*, 368 F.3d 820, 824 (8th Cir. 2004), (citing *Gavin v. Heckler*, 811 F.2d 1195, (8th Cir. 1987)). In this case, where the record itself "convincingly establishes disability and further hearings would merely delay receipt of benefits, an immediate order granting benefits without remand is appropriate." *Cline*, 939 F.2d at 569 (citing *Jefferey v. Secretary of H.H.S.*, 849 F.2d 1129, 1133 (8th Cir. 1988); *Beeler v. Bowen*, 833 F.2d 124, 127-28 (8th Cir. 1987):*accord Thomas v. Apfel*, 22 F. Supp. 2d 996, 999 (S.D. Iowa 1998) (where claimant is unable to do any work in the national economy, remand to take additional evidence would only delay receipt of benefits to which claimant is entitled, warranting reversal with award of benefits).

## IV. CONCLUSION

It is the holding of this court that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The court finds that there exists substantial evidence in this record contrary to the Commissioner's decision. *See Herbert v Heckler*, 783 F. 2d 128, 131 (8th Cir. 1986). The Commissioner's objections are **overruled.** Therefore, the Report and Recommendation is **accepted**, The Commissioner's decision to deny benefits is **overruled.** *see* 28 U.S.C.§ 636(b)(1) ("A judge of the court may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). The court **reverses** the ALJ's decision and **remands** this case to the Commissioner for calculation and award of benefits to Lundgren.

      **IT IS SO ORDERED.**

      **DATED** this 16th day of January, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA